## THE RIO GRANDE.

## THE A. DEMAREST.

## MARSHALL *v.* THE RIO GRANDE and THE A. DEMAREST.

*(District Court, S. D. New York. May 6, 1889.)*

1. COLLISION—WHARVES AND SLIPS—TOWING VESSEL OUT OF SLIP.

A tug in towing a sailing vessel out of a slip by a hawser from behind a covered pier is bound to see what vessels may be approaching, and to give the required signal before proceeding to cross the latter's course, even though she may have a right to clear before being shut in by the latter for a considerable period. The approaching vessel is bound to stop and back as soon as the intent of the other to cross is perceived.

2. SAME—SIGNALS—STOPPING AND BACKING—INSPECTORS' RULES.
　　The tug D. took the bark P. upon a hawser to tow her out of the slip between piers 19 and 20 East river, preparatory to getting along-side to tow her through Hell Gate. At the same time the steamer R. G. was coming up the East river against the slack ebb, to land across piers 19 and 20. The D., in going out of the slip, did not give the signal of two whistles required by the inspectors' rules, when the steamer was seen approaching, but continued straight across her course, till the steamer struck the P. The steamer was proceeding slowly, aided by a tug. The pilot of the steamer's tug, as soon as he saw the P. coming out of the slip, gave the steamer the order to reverse, which was obeyed. *Held*, both liable,—the D. for not giving the required signal; the steamer for delay in reversing after the danger was apparent; whether the delay was from want of lookout, delay in giving the order of reversal or in communicating with the engineer, the bells being out of order.

In Admiralty. Libel for collision.

*Goodrich, Deady & Goodrich*, for libelants.

*Butler, Stillman & Hubbard* and *Wm. Mynderse*, for the Rio Grande.

*Carpenter & Mosher*, for the Demarest.

BROWN, J. At about half past 11 A. M. of December 13, 1888, as the steamer Rio Grande, coming up the East river in the ebb-tide, was approaching her slip at pier 20, she came in collision with the brig Pickering, about 300 feet off pier 19, doing the latter considerable damage, for which the above libel was filed. The Pickering was in tow of the tug Demarest, on a hawser of about 10 fathoms, attached to the Pickering's stern, by which she had just been pulled out of her slip stern first, preparatory to being taken along-side the tug to be towed up the river through Hell Gate. Pier 19 is covered by a shed, which obstructed the view to the southward. Before reaching the mouth of the slip, the tug gave one long blast of her whistle. After getting out of the slip, the Rio Grande was observed near mid-river, off the Wall-Street ferry, approaching the slip between piers 19 and 20, aided by the tug Jewett. The design of the Demarest was to pull the brig a few hundred feet straight out into the river, across the course of the Rio Grande. She gave no signal of two whistles, nor any other signal than the long blast before leaving the slip. Upon the proof, I am satisfied that the mode adopted by the Demarest of taking the brig out by lines attached to the stern was not the best; and that a vessel like the Pickering could be more expeditiously handled by a hawser attached to the bow, and carried thence to the stern, and there attached by a noose, to be cast off as soon as the brig was out, or nearly out, of the slip. Had the latter mode been adopted, the brig could have been more quickly headed up river, and the Demarest have got along-side nearer to the New York shore, and out of the way of the Rio Grande. Independently of this consideration, however, I think the Demarest was to blame for undertaking to cross the course of the Rio Grande without giving the signal of two whistles, which the inspectors' rules require. The long blast was in no sense an equivalent. It gave no indication of a tow behind her, and a tug moving out of the slip under such a whistle would not naturally attract any continued attention from the Rio Grande, or the Jewett. The required signal of two whistles

would have done so. The pilot of the Demarest no doubt expected to be able to cross the Rio Grande's course before the latter would reach the Pickering. He miscalculated either the distance of the Rio Grande, or the rapidity of her approach. He had no right to expect the Rio Grande or the Jewett to stop and back to let the Pickering pass them, when he had not given them the signal of two whistles to indicate his intention to cross their course. Under the circumstances, I think he should also have given the danger-signal as he emerged from the slip. There was considerable bustle and stir upon pier 19. It was the usual landing place of the Rio Grande; and if the pilot of the Demarest did not know that the Rio Grande was approaching before he got out of the slip, he probably surmised it; and he knew it as soon as he got outside of pier 19. I am not prepared to hold that under the circumstances the Demarest was bound to back and wait in the slip simply because the Rio Grande was approaching it. The usual mode of the Rio Grande's landing was first to cover the entire slip from pier 19 to pier 20, thereby preventing for a considerable time any going in or out, until she had swung into her berth in the slip. Under such circumstances, I think a vessel on the point of leaving the slip has a right to go out, and that the incoming vessel has no controlling right to shut her in for a considerable time, but should wait long enough to let her clear, if seasonably apprised of her intention. The rules of the starboard hand and the right of way do not apply in such circumstances. But the Demarest was bound to ascertain the positions of any incoming vessels before leaving the slip, and to give them timely notice of her intention by the proper signals. For the neglect of these duties, which directly contributed to the collision, she must be held to blame.

2. As respects the Rio Grande, the question is whether she reversed her engines as soon as the brig was seen, or ought to have been seen, backing out of the slip. It was her duty under old rule 19 to back at once, because the situation was one of manifest danger. The testimony of the pilot of the Jewett and of the first mate of the Rio Grande is that she did. The engineer estimates that she was backing a minute and a half, and got over a hundred turns backward; but all the witnesses in behalf of the Rio Grande agree that she was not moving at a speed of over a couple of knots; and, had she made any such number of turns backwards, or been backing for a minute, it is not credible that the ship would not have been moving astern in the water before advancing her length of 300 feet. The testimony leaves no doubt that the Rio Grande was much more than 300 feet below the point of collision at the time when the brig, emerging from the slip, became plainly visible, and when her intent to cross the Rio Grande's bows was clear. I must regard the engineer's testimony, therefore, as a mere random estimate, not to be relied on. The master of the Rio Grande testifies that he gave the verbal order to reverse as soon as it was received through the first mate from the pilot of the Jewett; that it was obeyed immediately; that he turned and saw the brig at that time well clear of the dock, coming across his bows, her stern about crossing the Rio Grande's bow, and about 25 feet

ahead of him. The Rio Grande's engines, just before the order to reverse, were at rest, so that there was nothing to prevent the engines working astern as soon as the order was given. Several other witnesses on the part of the libelant and the Demarest confirm this statement of the master as to the closeness of the Rio Grande when she began backing. The weight of testimony is to the effect that the place of collision was not much, if any, below the line of the north side of pier 19. The tide was slack, the current slight. The Demarest was pulling somewhat up stream. The brig went very nearly straight across, and left the slip some 25 feet above its lower line in passing the scow. There is considerable difference in the testimony as to how far the Rio Grande was below the line of pier 19 when the brig emerged from the slip. The Demarest's witnesses, and some others, say that she was off Wall street, and that she had approached from a point about midway between the Wall-Street ferry-houses in New York and Brooklyn, where the Jewett had taken hold of her a few minutes before. If she was off Wall street when the Demarest came out of the slip, a glance at the chart will show that she must have been then from 500 to 600 feet distant from the point of collision, and not more than 100 feet nearer when the stern of the brig, coming out in tow on a hawser, ought to have been seen. The pilot of the Jewett, moreover, says that when he saw the brig he was coming up stream, and was about abreast of pier 18. That was 250 feet below the brig. The first officer of the Rio Grande, who gave his own hawser to the Jewett, says it was of 30 fathoms length. This, with the length of the Jewett, would make the Rio Grande nearly 500 feet below the line of collision at the time when the stern of the brig became visible; or, if the hawser was only half what the mate puts it, the distance would be some 400 feet. The estimate by the master of the Rio Grande of the distance of the place of collision from the line of the docks is from 300 to 400 feet. That estimate I think the most trusty. From one to two minutes must therefore have elapsed from the time the brig's stern was visible coming out of the slip until the collision. The Rio Grande was moving slowly, probably not over two to three knots; and, as the testimony above referred to establishes the fact that the engines were not backing until the Rio Grande was less than 100 feet from the brig, I find it impossible to avoid the conclusion, that a considerable interval elapsed after danger from the brig was plainly visible before the engines were reversed; and from the previous slow speed of the Rio Grande, and the comparatively slight incision of the wound in the brig, I am satisfied that, had the reversal been made with reasonable promptness, the collision would have been avoided; and for this reason the Rio Grande must also be held to blame. Whether the delay in backing arose from inattention of the pilot of the Jewett, or of the first officer of the Rio Grande, who was forward, but engaged in other duties, (as appears from his expression of "first seeing the brig on looking up on the signal from the Jewett,") or from delay on the part of the Jewett in ordering the engines reversed, or from delay in transmitting the order verbally, the bell-wires being out of order, it does not seem necessary to decide. It is suf-

ficient to charge the Rio Grande with blame that there was reasonable time, space, and opportunity for her to avoid the collision by backing after the brig ought to have been seen coming out of the slip, and after her intent was clear. *The Catskill*, 38 Fed. Rep. 367; *The Columbia*, 23 Blatchf. 268, 25 Fed. Rep. 844; *The Scuff*, 32 Fed. Rep. 237; *The Non Pareille*, 33 Fed. Rep. 524, 526. The libelant is entitled to a decree against both vessels, with costs.