# The T. B. Van Houten.

## Central Railroad of New Jersey v. The T. B. Van Houten.

*(District Court, S. D. New York. April 25, 1892.)*

1. COLLISION—STEAM VESSELS CROSSING—STARBOARD HAND—SIGNALS—REVERSING.
    A steam tug was going up the North river with a car float alongside. A ferryboat started from New York to Communipaw, the courses of the vessels thus being crosswise courses, with the ferryboat on the starboard hand of the tug. The ferryboat slowed about one third of the way across the river to allow a raft to pass. She then started up, and a half minute after gave one whistle to the tug, when the

latter was 500 or 600 feet below her in the river. The tug gave no signal, and the float shortly afterwards struck the ferryboat. *Held*, both in fault,—the tug, (1) for not going to the right, (2) for not signaling her direction to the ferryboat, (3) for not reversing in a situation that involved risk of collision; the ferryboat, for not giving the signal indicating her intention to pass ahead of the tow until it was too late to be of any use.

2. SAME—TIMELY SIGNALS—INSPECTOR'S RULES.

"The giving of timely signals, in obedience to the inspector's rules, is among the cumulative means provided by law for avoiding collisions, is necessary in harbor navigation, and the failure to observe this rule is one of the most prolific causes of disaster."

In Admiralty. Libel for collision.
*Carpenter & Mosher*, for libelant.
*Wilcox, Adams & Green*, for claimants.

BROWN, District Judge. Before light on the morning of January 28, 1891, as the ferryboat Elizabeth was making one of her regular trips from Liberty street, New York, to Communipaw ferry, Jersey City, she was run into in about mid river by a car float going up river in tow on the starboard side of the steam tug T. B. Van Houten, and received damages to her wheelhouse and machinery, to recover which the above libel was filed.

The tide was ebb; the weather clear, but dark, and good for seeing lights. The Van Houten had come around the Battery and was bound for the Pavonia ferry, Jersey City, and was heading about N. N. W. The ferryboat, after getting about a third of the way across from the New York shore, had been obliged to stop her engines to allow a steam tug with a raft of logs, in all about 300 to 400 feet long, to pass down ahead of her with the tide. The ferryboat did not, however, wholly lose her headway; and as soon as the raft was clear, she started her engines ahead, her course being directed nearly straight across the river, but a little upwards. The Van Houten was then probably about 100 or 150 yards further out in the river than the Elizabeth. Soon after starting up, probably about a half a minute after, the Elizabeth gave one whistle, and heard a whistle from the Van Houten, which, as several witnesses testify, was understood as a reply. The pilot of the Van Houten testifies that he heard no whistle from the Elizabeth and gave none to her; but that he gave an answer of one whistle about the same time to a signal of one whistle that was received from another tug, the Beach, which was going down river to the westward of both. The pilot of the Elizabeth and other witnesses testify that when the Elizabeth started up after the raft had cleared, the Van Houten was a quarter of a mile below him. Several witnesses for the Van Houten, including the pilot, make the Van Houten at that time only from 500 to 600 feet below; and such I think is the weight of the testimony and of the circumstantial evidence.

I have no doubt that the primary fault in this collision was the Van Houten's. She had the ferryboat on her starboard hand; she saw and recognized the Elizabeth at an abundant distance, and knew that the checking of her speed for the raft was but temporary, and that the Elizabeth had the right of way. When she started up on clearing the raft,

that was plainly visible, had a proper lookout been maintained. Yet according to the pilot's own story, he continued on across her course without giving her any signal whatsoever, and without reversing until the Beach's whistle was heard, a half minute after the ferryboat had started up, when it was too late to be of any use. He thus violated three of the express rules; namely, (1) in not going to the right in that situation; (2) in not signaling the Elizabeth to indicate the direction he intended to take; (3) in not reversing in time in a situation that involved evident risk of collision.

I think the ferryboat is also in fault for not giving a timely signal to the Van Houten. The two boats were on crossing courses, and risk of collision was plain, if both kept on. The time when the raft cleared and the ferryboat started up, was the extreme limit at which she could be excused for delaying her signal. When she gave her signal about half a minute afterwards, it was too late. The Van Houten, being incumbered, could not then go astern; and she reversed at once, but could not avoid collision. It is probable that this signal was given at the same time the signal of the Beach was given, as only one signal was heard by the Van Houten, and the Elizabeth did not hear the signal of the Beach. In my judgment the ferryboat's signal should have been given before the raft had passed; for the ferryboat had way on; the Van Houten was seen to be much nearer than half a mile, and was in fact less than one-eighth of a mile distant; and the fact that the way of the Elizabeth had been checked by the raft when she was so near the Van Houten, made it specially appropriate that her purpose to go ahead of the latter should be signaled to the Van Houten as required by the inspector's rules, since without any signal the latter might possibly suppose the ferryboat would wait till the Van Houten had passed. The Van Houten indeed had no right to count upon it; and it was, therefore, no legal excuse to her for omitting the proper signal on her own part, or for not proceeding as the rules required.

It is true also that the Elizabeth had a right to expect that the Van Houten would keep out of her way; but that was no excuse for the Elizabeth in omitting to give a timely signal in obedience to the inspector's rules indicative of her intent to increase her speed and go ahead. The rules as to signals being authorized by law (Rev. St. § 4412) have the same force as the statutory rules when not in conflict with the latter. *The B. B. Saunders*, 23 Blatchf. 378, 387, 25 Fed. Rep. 727; *The Dentz*, 29 Fed. Rep. 528; *U. S.* v. *Miller*, 26 Fed. Rep. 97. They are among the cumulative means provided by law for avoiding collision. Their usefulness and absolute necessity in harbor navigation are attested by daily experience; and the failure to observe them in time is one of the most prolific causes of disaster to property and life. Had a timely signal been given by the ferryboat, as late even as when she started up, there is no reason to suppose the Van Houten would not have heard it and gone astern accordingly. For these reasons the damages and costs must be divided; and the libelant is entitled to recover for only one half its loss. .