## THE AURELIA.

### THE UMATILLA.

(District Court, N. D. California. September 21, 1910.)

Nos. 13,491, 13,492.

1. COLLISION (§ 7*)—REGULATIONS—SUPERVISING INSPECTORS' RULES.

Regulations to guard against collision established by the board of supervising inspectors under authority of Rev. St. §§ 4405, 4412 (U. S. Comp. St. 1901, pp. 3017, 3020), have the force of law; but they are only valid and obligatory in so far as they are not inconsistent with statutory regulations.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 6; Dec. Dig. § 7.*]

2. COLLISION (§ 76*)—STATUTORY RULES—CONSTRUCTION.

Inland Navigation Rules, art. 28, 30 Stat. 102 (U. S. Comp. St. 1901, p. 2884), which provides that "when vessels are in sight of one another a steam vessel under way whose engines are going at full speed astern shall indicate that fact by three short blasts on the whistle," is to be construed as it reads as applying in all cases when vessels are in sight of one another, and is not limited by rule 6 of the pilot rules, adopted by the supervising inspectors, that whistle signals shall be given and answered by vessels "passing or meeting at a distance within half a mile of each other."

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 124–137; Dec. Dig. § 76.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

3. COLLISION (§ 76*)—STEAM VESSELS PASSING—MUTUAL FAULTS.

A collision occurred in the bay about 2,000 feet off the San Francisco piers in the daytime between the steamships Aurelia and Umatilla. The Umatilla had just backed from her pier to go out, and when 1,000 feet from the end of the pier gave a passing signal of two whistles to the Aurelia, which was in sight inward bound for Oakland. The signal was answered, but the Umatilla continued to back for two or three minutes at full speed without giving any signal of such fact. She was in full sight of the Aurelia, however, which did not materially change her course until the vessels were too near together to avoid collision. *Held*, that both

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vessels were in fault; the Umatilla for failing to give the signal required by the rules to indicate that her engine was going full speed astern, and the Aurelia for not keeping a proper lookout which would have enabled her to avoid the collision notwithstanding the fault of the Umatilla.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 137; Dec. Dig. § 76.*]

In Admiralty. Cross-suits for collision by the Pacific Coast Company against the steam schooner Aurelia, and by the Russell & Rogers Company against the American steamer Umatilla. Decree against both vessels dividing damages.

George W. Towle, for libelants.

McClanahan & Derby, for claimants.

FARRINGTON, District Judge. October 27, 1905, the steamer Umatilla, owned by the Pacific Coast Company, having on board a full cargo of merchandise and a large number of passengers, destined for Victoria, lay at Broadway pier in the harbor of San Francisco. At 19 minutes past 11 o'clock on the morning of that day, after casting off her moorings and giving one blast of her whistle, the Umatilla backed out of her berth slowly, then at full speed astern, and finally her propellers were operated at full speed ahead. The purpose of this maneuver was to enable the ship to swing her head to the north and proceed on her outward voyage. In the meantime, the steamship Aurelia, owned by Russell & Rogers Company, heavily laden with lumber, inward bound from northern ports, having discharged a portion of her cargo at Meigg's wharf, was passing along the sea wall bound for Oakland long wharf. As soon as the Umatilla had cleared the Broadway wharf, the two vessels were in sight of each other. The Umatilla backing at right angles to the pier line, at a point about 1,000 feet from the end of the wharf, gave two whistles, thus indicating her intention to go ahead and her wish to pass the Aurelia on her starboard side. The Aurelia immediately assented by blowing two whistles. Notwithstanding her signal, the Umatilla continued to move backward several minutes before her sternway was overcome. A collision took place on the northerly line of Broadway wharf, and about 2,000 feet out from the end of the wharf. Both vessels were injured, and libels are filed against each of them.

On the part of the Aurelia, it is contended that the Umatilla backed out further than was necessary, and that she failed to give three whistles when she came in sight of the Aurelia, to indicate that her engines were working full speed astern. On the part of the Umatilla, it is alleged that the Aurelia did not alter her course when the two whistles were exchanged, that the sternway of the Umatilla could have been known by the master of the Aurelia had he maintained a proper lookout, and that there was ample seaway within which the Aurelia could have been so navigated as to involve no danger of collision, but that, notwithstanding this, the Aurelia continued her course at a speed of 7½ knots per hour, without taking the obviously necessary and reasonable precautions which would have prevented the collision.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

The testimony on behalf of the Umatilla tends to show that her engines, by direction of her master, were operated as follows: From 11:19 o'clock a. m. to 11:20 o'clock a. m. at slow speed astern; from 11:20 a. m. to 11:22 a. m. at full speed astern; and from 11:22 a. m. to 11:25 a. m. at full speed ahead. At 11:20 o'clock a. m. the stern of the Umatilla was about 200 feet beyond the end of the wharf. The Umatilla being but 310 feet in length, and the full speed backward movement having been initiated at this point, she quickly cleared the wharf, and was in the open bay. Here the end of Lombard street wharf must have been in plain sight from the bridge of the vessel. While her engines were thus at full speed astern, the Umatilla's captain saw the Aurelia to the north of the Lombard street wharf. At the time the Umatilla cast off her moorings, she properly gave one whistle, but failed to give any further signal until she was about 1,000 feet from the pier's end. Then the order was given to set her engines at full speed ahead, and two whistles were blown. At this time the vessels were from 1,500 to 2,200 feet apart. Owing to the fact that her engines were of an early type, it was about 30 seconds before the propellers were reversed. In failing to signal that her engines were operating at full speed astern, the Umatilla was clearly at fault.

In the regulations applicable to rivers, harbors, and inland waters (Act June 7, 1897, c. 4, 30 Stat. 100 [U. S. Comp. St. 1901, p. 2883]), it is provided that:

"When steam vessels are moved from their docks or berths, and other boats are liable to pass from any direction toward them, they shall give the same signal as in the case of vessels meeting at a bend (one long blast of the steam whistle), but immediately after clearing the berths so as to be fully in sight they shall be governed by the steering and sailing rules." Article 18, Rule 5 (2 Fed. St. Ann. p. 179).

Article 28 of the steering and sailing rules reads thus:

"When vessels are in sight of one another a steam vessel under way whose engines are going at full speed astern shall indicate that fact by three short blasts on the whistle." 2 Fed. St. Ann. p. 181; 30 Stat. 102 (U. S. Comp. St. 1901, p. 2884).

"A vessel is 'under way,' within the meaning of these rules, when she is not at anchor, or made fast to the shore, or aground." 2 Fed. St. Ann. p. 174 (U. S. Comp. St. 1901, p. 2876).

It is impossible to determine with any degree of accuracy the distance between the two vessels at the time the Umatilla cleared her wharf, and when her engines were first set at full speed astern. The vessels, however, were plainly in sight of each other, and were somewhere between 3,000 and 3,700 feet apart. They were approaching at an angle of about 45 degrees. The Aurelia had a speed of 7½ knots per hour, or 750 feet per minute, and the Umatilla had a speed of not to exceed 500 feet per minute.

Counsel seeks to avoid the force of this rule by urging that the words "in sight of," in article 28 of the act, mean within half a mile of, and that it is only when vessels are within half a mile of one another that a steam vessel under way, whose engines are going at full speed astern, shall indicate that fact by three short blasts of the whistle.

In support of this view, reference is made to rule 6 of the pilot rules for Atlantic and Pacific Coast inland waters, adopted by the board of United States inspectors January, 1902, and approved by the Secretary of Commerce and Labor July 6, 1904, which is as follows:

"The signals, by the blowing of the whistle, shall be given and answered by pilots, in compliance with these rules, not only when meeting 'head and head' or nearly so, but at all times when passing or meeting at a distance within half a mile of each other, and whether passing to the starboard or port."

Section 4405 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3017) authorizes the board of supervising inspectors to "establish all necessary regulations required to carry out in the most effective manner the provisions of this title, and such regulations, when approved by the Secretary of Commerce and Labor, shall have the force of law."

Section 4412 of the same title (52) empowers the board to "establish such regulations to be observed by all steam vessels in passing each other, as they shall from time to time deem necessary for safety." (U. S. Comp. St. 1901, p. 3020).

Regulations established by the board of supervising inspectors undoubtedly have the force of law, but they are only valid and obligatory in so far as they are not inconsistent with statutory regulations. The Grand Republic (D. C.) 16 Fed. 424, 427; United States v. Miller, (D C.) 26 Fed. 95, 97; The T. B. Van Houten (D. C.) 50 Fed. 590; 7 Cyc. 321.

It is not within the power of the board by its regulations to relax or nullify plain rules which have been enacted by Congress itself to guard against collisions.

The statute declares the signal must be given under certain conditions when the vessels are in sight of one another. If the board has the power to say that this shall be construed to mean "within half a mile of one another," it may with equal authority declare that the signal need be given only when the vessels are within 500 feet of each other. To admit that article 28 must be interpreted by the rules of the board is simply to admit that the board can amend or nullify an act of Congress. Article 28 must be understood as it reads. No other interpretation is permissible.

The wisdom of the rule as enacted by Congress is obvious. Whether propellers are working ahead or astern cannot always be determined easily by the man on a distant lookout. To an approaching vessel this is information of the highest importance. If the engines are still, and the vessel is moving merely with a previously acquired momentum, its speed is diminishing, and one may determine with reasonable accuracy where he may with safety cross its course. But, if the engines are working full speed astern, the vessel is probably gathering both speed and momentum, and the shipmaster who wishes to cross its course has a very different and difficult problem. If he is approaching at an acute angle at the rate of two knots an hour, it may be sufficient that he is informed as to the movement of his neighbor's engines when the vessels are within half a mile of each other; but if he is approaching at a right angle to his neighbor's course at a speed of 10 knots per

hour, with favoring wind and tide, such notice may be wholly insufficient. Tides, currents, and winds, the relative speed and courses of vessels, as well as other conditions whose influence can neither be known nor measured in advance, make it unwise to fix by law any arbitrary distance beyond which it is unnecessary, and within which it is necessary, to give the notice required by the rule. Whenever there is a possibility of collision, whether the approaching vessels in sight of each other be far or near, the vessel operating her engines full speed astern should signal that fact. The purpose of the statutory rule is to insure the highest degree of safety; and strict obedience to that rule, construed precisely as it reads, will eliminate accidents which may result from erroneous judgment as to the distance between the ships, as to the necessity of the notice itself, or as to the possibility of a collision.

Spencer, in his work on Marine Collisions (section 75), says:

"The term 'when in sight of each other' is to be taken in its usual sense, meaning that signals are to be used when vessels are sufficiently near each other to make the use of signals necessary to an understanding of each other's course."

The master of the Umatilla should have given three blasts of his whistle when his vessel emerged from the pier; the long blast when the moorings were cast off was not sufficient. Rio Grande (D. C.) 38 Fed. 849.

Without giving the warning required by the rule, he moved backward for two minutes at the highest speed his engines were capable of producing. He knew, or should have known, that his engines could not be reversed instantly, and also that when this was accomplished some little time must elapse before his sternway could be overcome. There is undisputed evidence that under substantially similar conditions the Umatilla had been stopped in 55 seconds; yet on this occasion the Umatilla continued her backward course for three minutes after the order full speed astern had been given, and the two whistles were blown. It does not seem to me that this was good seamanship. Had the rule been observed, the attention of the Aurelia's master would in all probability have been awakened in season to stop or turn aside his vessel. The captain of the Umatilla had no right to presume that those on board the Aurelia would understand his movements and avoid a collision if he ignored the rule.

Here were two vessels rapidly approaching each other at an angle of about 45 degrees, the Aurelia moving ahead at the rate of 750 feet per minute, and the Umatilla proceeding at a constantly diminishing speed, and becoming more and more helpless. As the more manageable vessel of the two, it was the duty of the Aurelia to keep a careful lookout, and if possible to avoid a collision, no matter how poor the Umatilla's seamanship, or how unnecessary it may have been for her to back out so far into the bay. Poor seamanship on the part of the Umatilla is no excuse for negligence and inattention on the part of the Aurelia.

The sky was clear, the bay calm, the tide slack. There was ample seaway, and the nearest vessel was 500 or 600 feet northeast of the

point of collision. Careful navigation by the Aurelia certainly could and should have avoided the accident.

It appears from Capt. Erickson's testimony that he answered the Umatilla's two whistles with two blasts from the Aurelia, thus agreeing that the Aurelia should pass the Umatilla on her starboard side. He steadied his course on a vessel anchored in the bay west of Goat Island, and somewhat further north than its southern extremity. Thereafter Capt. Erickson, though he stood on the bridge of the Aurelia, does not appear to have noticed the Umatilla until the vessels were within from 150 to 600 feet of each other. Then he put his helm hard astarboard, but it was too late. There was nothing to prevent Capt. Erickson from observing the movements of the Umatilla, and her increasing helplessness. There was a time before the collision became inevitable when it could have been avoided had the Aurelia maintained a proper lookout, and had she been navigated with the care and vigilance which the law requires under such circumstances. The fact that the Umatilla failed to give notice that her engines were operating astern, and that she gave two blasts of the whistle at 1,000 feet from the wharf, thus indicating that she was about to complete her maneuver by moving forward toward the north, does not excuse Capt. Erickson's inattention, and it did not absolve him from the duty to exercise the utmost care and vigilance.

In Foster v. Miranda, 9 Fed. Cas. 560 (No. 4,977), there was a collision in the nighttime between a brig and a schooner on Lake Michigan. It was shown that the brig, sailing at the time on the starboard tack, displayed a white light. This was in violation of an act of Congress which, under such circumstances, requires a red light. It also appeared that the schooner failed at the time of the collision to maintain a competent lookout. It was held that both vessels were at fault, and the loss was divided equally.

In H. S. Beard (D. C.) 134 Fed. 648, two towboats, dragging a submerged scow in New York Harbor, were held negligent because they had failed to place a signal on the scow. The yacht which came in collision with the scow was held to be in fault also because it failed to maintain a competent lookout.

"Such a lookout," said the court, "might have seen the scow as it was dragged from time to time to or near the surface of the water, or he might have discovered the position of the scow from the hawser with which it was being towed."

In John T. Williams (D. C.) 68 Fed. 938, the schooner John T. Williams backed out of her slip in Jersey City, but wore around so slowly before she was straightened out down the North river that she came in contact with a dumper which was going up the river in tow of the tug Moran. The schooner was held to be in fault for dilatoriness and inattention for not making a reasonably speedy turn; the Moran for failing to give due attention to the slow maneuvering of the schooner, and for failing to take measures to avoid the collision, and keep away from the schooner.

Under all the circumstances, I must find both the Umatilla and the Aurelia at fault. The usual order of reference will be made, and the damages and costs will be divided equally.